UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re:<br><br>SIMPLICITY MA, LLC<br>D/B/A SIMPLICITY EQUIPMENT AND<br>SERVICE,<br><br>    Debtor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 7<br>Case No. 23-40877-CJP |

**MEMORANDUM AND ORDER ON THE MOTION TO COMPROMISE**

Before the Court is the *Motion to Approve Stipulation of Settlement by and Among Joseph H. Baldiga, Chapter 7 Trustee, James Butler, Citizens Bank, N.A. and BOKF, NA d/b/a Bank of Texas* [ECF No. 105] (the "Motion to Compromise") filed by the chapter 7 trustee, Joseph H. Baldiga (the "Trustee"), by which the Trustee seeks approval of the *Stipulation of Settlement by and Among Joseph H. Baldiga, Chapter 7 Trustee, James Butler, Citizens Bank, N.A. and BOKF, NA d/b/a Bank of Texas* [ECF No. 104] (the "Stipulation"), and the preliminary [ECF No. 108] and supplemental objections [ECF No. 115] (together, the "Objection") to the Motion to Compromise filed by Komptech Americas LLC ("Komptech"). At a hearing on the Motion to Compromise on July 25, 2024 (the "Hearing"), the Court directed further briefing on issues related to 11 U.S.C. § 509 and Komptech's ability to seek relief or to collect damages in another forum. Ord. [ECF No. 116]. The Court also directed BOKF, NA, d/b/a Bank of Texas ("BOKF") to clarify certain issues raised at the Hearing in its additional briefing. Upon consideration of the further briefing filed by the Trustee [ECF No. 121] ("Trustee Brief"), BOKF [ECF No. 122] ("BOKF Brief"), and Komptech [ECF No. 123] ("Komptech Brief"), the Motion to Compromise, the Objection, argument of counsel at the Hearing, and the record of this case

and the related adversary proceeding [Adversary Proceeding No. 24-4016] (the "Action") initiated by the complaint filed by Komptech (the "Complaint") [ECF No. 84], the Motion to Comprise is hereby GRANTED with certain clarifications for the following reasons.

## I. BACKGROUND

### A. Bankruptcy Case

On October 20, 2023, Simplicity Ma, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code" or "Code").[1] On October 23, 2023, the United States Trustee appointed the Trustee.

#### *i.    Claims Asserted*

On December 8, 2023, Citizens Bank, N.A. ("Citizens") filed Proof of Claim 6-1, asserting a partially secured claim in the amount of $1,786,888.83, of which Citizens estimates that $800,000 is secured by all assets and perfected by a UCC financing statement.

On December 27, 2023, James Butler ("Butler") filed Proof of Claim No. 11-1, asserting a secured claim in the amount of $102,573.96, and Proof of Claim No. 13-1, asserting a secured claim in the amount of $206,147.47 (collectively, the "Butler Claims"). The Butler Claims are purportedly secured by all tangible and intangible property of the Debtor and, according to Butler, have an outstanding balance (inclusive of attorneys' fees and interest) as of the date hereof of not less than $325,000.00.

On March 26, 2024, BOKF filed Proof of Claim No. 18-2 (as amended, the "BOKF Claim"), asserting a secured claim in the amount of $1,240,181.73. The BOKF Claim is

---

[1] Unless otherwise noted, all section references herein are to the Bankruptcy Code.

2

purportedly secured by a blanket lien and purchase money security interest in certain equipment of the Debtor.

On January 29, 2024, Komptech filed Proof of Claim No. 20-1 (the "Komptech Claim") asserting a secured subrogation claim in the amount not less than $764,322.55. The Komptech Claim is based on "[s]ubrogation to rights of BOKF when BOKF's claim is paid in full" and purportedly secured for the same reasons offered in the BOKF Claim. In furtherance of a financing arrangement connected to the Debtor's purchase of certain equipment from Komptech (the "Komptech Equipment"), Komptech explains the "Debtor as borrower, Komptech as Grantor, and BOKF as Lender" entered into an assignment agreement, [AP ECF No. 17, Ex. B] (the "Assignment Agreement"), under which Komptech established a deposit account at BOKF in the amount of $750,000.00 as collateral for its guarantee obligation to BOKF (the "Komptech Collateral"), Compl., at ¶¶ 37–40. It is uncontested that "BOKF applied the $764,322.55 then contained within the deposit account toward debts the Debtor owed BOKF." Compl. at ¶ 46.

      *ii.*   *Public Auction Sale*

On December 26, 2023, the Trustee filed the *Motion for an Order Authorizing and Approving Public Auction Sale of Certain Titled Vehicles, Machinery, Equipment, Parts, Inventory, Fixtures and Furniture Free and Clear of Liens, Claims, Interests, and Encumbrances* [ECF No. 38] (the "Sale Motion"). The Court entered the order approving the Sale Motion on January 23, 2024 [ECF No. 53] (the "Sale Order"). On February 6, 2024, the public auction sale (the "Public Auction Sale") was conducted in accordance with the Sale Order. On February 29, 2024, the Trustee filed the *Motion for Approval of Proposed Disbursement of Sale Proceeds* [ECF No. 64] (the "Initial Disbursement Motion").

The Initial Disbursement Motion did not provide for any payment on account of the

3

Butler Claims because, at that time, the Trustee believed that the BOKF Claim and liens were senior in priority to the liens asserted by Butler in the Komptech Equipment. Butler filed a limited objection to the Initial Disbursement Motion [ECF No. 77] concerning the priority of his asserted security interest (*i.e.*, the Butler Claims) in the portion of the net sale proceeds derived from the Public Auction Sale of the Komptech Equipment (the "Sale Proceeds") relative to the priority of BOKF's security interest (*i.e.*, the BOKF Claim).[2] On April 10, 2024, Komptech filed the Complaint initiating the Action against BOKF and Butler in connection with the BOKF Claim, the Butler Claims, and the disbursement of the net Sale Proceeds derived from the Trustee's Public Auction Sale of the Komptech Equipment. The Court entered an order approving the Initial Disbursement Motion on April 26, 2024 [ECF No. 96].

On May 3, 2024, the Trustee filed a *Motion to Amend Order Authorizing and Approving Disbursement of Sale Proceeds from Public Auction Sale* [ECF No. 98] (the "Motion to Amend") seeking to adjust the previously approved allocation and disbursement to account for certain sale expenses. On May 23, 2024, the Court entered an order approving the Motion to Amend [ECF No. 103] (the "Amended Order"), providing that the Trustee shall hold the balance of the net Sale Proceeds, $1,446,082.49, in escrow (the "Escrowed Funds") until entry of a further order of the Court, entered on motion and notice to the affected parties, that authorizes and directs the disbursement of such funds, and such order having becoming final (*i.e.*, no longer subject to reconsideration or appeal). The Trustee has represented that he has disbursed all proceeds from the Public Auction Sale other than the Escrowed Funds.

---

[2] Komptech purchased the Komptech Equipment at the Public Sale Auction for $1,600,000.00 in cash. Compl., at ¶ 54.

4

B.  **Adversary Proceeding**

Through the Action, Komptech is seeking to: (a) equitably subordinate the BOKF Claim to those of Komptech under § 510(c)(1) ("Count I"); (b) subordinate the Butler Claims to those of Citizens under § 510(a) ("Count II"); and (c) in the alternative, disallow the Butler Claims under § 502 ("Count III").  In relation to Count I of the Complaint, Komptech asserts that the BOKF Claim should be subordinate to those of Komptech because BOKF did not properly perfect or notify Butler of its purchase money security interest, such that Butler's asserted senior lien would extend to the Sale Proceeds (the "Komptech/BOKF Claims").  In Counts II and III relating to Butler, Komptech asserts that (i) the Butler Claims should be subordinate to any and all claims of Citizens (Count II) or that (ii) the Butler Claims are unenforceable and should be disallowed for lack of consideration and because Butler

> received payment, for his benefit as a creditor of the Debtor, on account of an antecedent debt while the Debtor is presumed to have been insolvent or within 90 days of the Petition Date, that enabled him to receive more than he would have received in this Case and had the transfer not been made and he received payment under the provisions of the Bankruptcy Code.

Compl., at ¶¶ 72, 74 (Count III, together with Count II, the "Komptech/Butler Claims").

Butler denies the allegations in the Complaint and filed a *Motion to Dismiss Adversary Proceeding* [AP ECF No. 18] (the "Motion to Dismiss").  In the Motion to Dismiss, Butler alleges that the Komptech/Butler Claims are property of the Estate and Komptech lacks standing to assert such claims.  The Trustee filed a *Motion to Intervene in Adversary Proceeding* [AP ECF No. 19] (the "Motion to Intervene").  In the Motion to Intervene, the Trustee asserts, *inter alia*, that the Komptech/Butler Claims, as potential avoidance actions under 11 U.S.C. §§ 547(b), 548(a), and 550, constitute property of the Estate pursuant to 11 U.S.C. § 541(a) (the "Trustee Claims" and, collectively with the Komptech/Butler Claims, the "Claims").  Komptech filed an

objection to the Motion to Intervene [AP ECF No. 26].

  **C. The Stipulation**

  The Trustee seeks approval of the Stipulation pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. In addition to releasing claims among parties to the Stipulation, the Stipulation provides for distribution of the Escrowed Funds. The Trustee would distribute $300,000 to the following parties: Citizens ($69,571.32), the Debtor's estate ($115,214.34), and Butler ($115,214.34). The balance of the Escrowed Funds would be paid to BOKF ($1,146,082.49), less certain possible adjustments—resulting in an amount less than its asserted secured claim. The Stipulation also allows the Butler Claims in the discounted secured amount of $300,000.00, with the option to file an unsecured claim for additional amounts. The Trustee represents that he has investigated the Butler Claims and other issues raised in the Complaint, the circumstances relating to the priority of the Butler Claims, and the underlying rights and obligations of Butler and Citizens and that, in his judgment, the Stipulation benefits the estate and is fair and reasonable.

  Komptech objects to the proposed settlement. It argues that the Trustee may not compromise its equitable subordination claims asserted in Count I of the Complaint. In response to questions and concerns raised by the Court at the Hearing on the Motion to Compromise regarding the intended effect of the Stipulation with respect to the equitable subordination claims asserted in Count I of the Complaint,[3] there appeared to be some inconsistency between the language of the Stipulation and statements made by the Trustee with respect to the effect of the proposed settlement on the claims asserted in the Action. BOKF clarified in its brief that

---

[3] Komptech also noted inconsistencies in the Stipulation and deposition of the Trustee with respect to Count I. *See* Obj., at 5 n.4.

6

approval of the Stipulation will not compromise or otherwise affect the Komptech/BOKF Claims (Count I) or Komptech's rights or remedies asserted in Count I of the Adversary Proceeding. BOKF Br., at 2.  The Trustee clarified the same on the record at the Hearing and in his brief. Trustee Br., at 1–2.  Given these clarifications, the Stipulation would not settle or affect any direct claims that Komptech may have against BOKF as asserted in Count I of the Complaint or otherwise, but it would operate to finally resolve claims and related remedies that are property of the estate, including as asserted in Counts II and III.  Further, BOKF represented that, "upon distribution of the funds to BOKF in accordance with the Stipulation, BOKF will segregate said funds in a separate suspense account pending final, non-appealable order of this Court determining disposition of [those] funds." BOKF Br., at 2.  Komptech objects to any clarification or "redlin[ing]" of the Stipulation by this Court.  Komptech Br., at 9.  That objection is overruled as adequate notice has been provided to Komptech and other creditors under the circumstances, and the clarifications do not adversely affect the estate or materially change the benefits or burdens of the Stipulation with respect to the estate.

As will be discussed below, Komptech also objects to the Stipulation on the bases that it has not agreed to the Stipulation and that it is entitled to a distribution from the Escrowed Funds on account of its subrogation claim.  Komptech also argues that any distribution to BOKF will deprive it of a remedy should it prevail on its equitable subordination claim asserted in Count I of the Complaint.

## II. LEGAL STANDARD

In determining whether a settlement agreement should be approved, a bankruptcy court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Jeffrey v. Desmond*, 70 F.3d 183, 185

7

(1st Cir. 1995) (quoting *In re GHR Cos.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985) (additional citation omitted)). Approval of a proposed compromise is left to the sound discretion of the reviewing court. *Id.* (citing *In re Anolik*, 107 B.R. 426, 429 (D. Mass. 1989) (collecting cases)). The United States Court of Appeals for the First Circuit has recognized that, in exercising such discretion, "[t]he [bankruptcy] judge . . . is not to substitute her judgment for that of the trustee, [. . .] the trustee's judgment is to be accorded some deference[,]" and that "[c]ompromises are favored in bankruptcy." *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 50 n.5 (1st Cir. 1998) (citations and quotations omitted). The Court

> may consider, among other factors: (1) the probability of success were the claim to be litigated—given the legal and evidentiary obstacles and the expense, inconvenience and delay entailed in its litigation—measured against the more definitive, concrete and immediate benefits attending the proposed settlement (so-called "best interests" standard); (2) a reasonable accommodation of the creditors' views regarding the proposed settlement; and (3) the experience and competence of the fiduciary proposing the settlement.

*Id.* at 50 (internal citation and additional citations omitted).

The burden of establishing the fairness of a compromise rests on the proponent(s) of the compromise, *see, e.g., In re 110 Beaver St. P'ship*, 244 B.R. 185, 187 (Bankr. D. Mass. 2000); however, the Court does not conduct a mini-trial or evidentiary hearing to adjudicate the issues being settled, *see, e.g., In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010). The Court "is not to decide the numerous questions of law and fact raised" by the compromise but is "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *ARS Brook, LLC v. Jalbert (In re ServiSense.com, Inc.)*, 382 F.3d 68, 71–72 (1st Cir. 2004) (internal quotation and citation omitted); *see also Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Courts generally "rel[y] heavily on the trustee" and defer to the trustee's

judgment, provided there is "a legitimate business justification" for the settlement. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *see also Hill v. Burdick (In re Moorhead Corp.)*, 208 B.R. 87, 89 (B.A.P. 1st Cir. 1997) (trustee's judgment as to the propriety of the proposed settlement is to be accorded some deference).

### III. DISCUSSION

    A.    **Does Komptech Have an Interest in the Escrowed Funds That Must Be Adequately Protected or That Requires Its Consent to the Settlement?**

I have also weighed that the settlement contemplated by the Stipulation arguably has the most direct economic effect on Komptech because payment of any amount with respect to the disputed Butler Claims reduces the amount that is paid to BOKF, or could be paid to Komptech, as subrogee of BOKF. It is not disputed that Komptech deposited $750,000.00 in an account for BOKF, as a non-recourse guarantor, on account of the obligations of the Debtor to BOKF that BOKF applied to reduce the debt of the Debtor (by then, the interest-accrued sum of $764,322.55). It also appears to be undisputed that, after application of the funds paid by Komptech, BOKF asserts a secured claim against the estate in the amount of $1,240,181.73.

Komptech asserts that it should be entitled to a portion of the funds otherwise payable to BOKF because it possesses equitable subordination claims against BOKF and, pursuant to 11 U.S.C. § 509(a), it is subrogated to a portion of the BOKF Claim because it paid the full amount for which it was obligated under a non-recourse guaranty. BOKF asserts that Komptech does not have standing to object to the settlement because of contractual waivers or other contractual limitations on its rights of subrogation and may not assert a claim to the Escrowed Funds proposed to be paid to BOKF under equitable subrogation principles and operation of 11 U.S.C. § 509(a) and (c). It has now been made clear that the Stipulation will not affect the equitable

9

subordination claims of Komptech raised in Count I of the Complaint, or any other direct claims of Komptech that could not have been brought by the Trustee, and that any Escrowed Funds distributed to BOKF will be segregated and held pending resolution of Count I of the Complaint. Given that, I must focus on whether Komptech has a present interest in the Escrowed Funds by virtue of rights of subrogation that would support its contention that its consent to the settlement is necessary or that it should receive any funds distributed to BOKF on a *pari passu* basis with BOKF (or its interest must be adequately protected). *See* Komptech Br., at 4 n.5.

I assume for purposes of its Objection that Komptech has standing to object to approval of the Stipulation, notwithstanding the clarification that the Stipulation will not affect its Count I claim. It does not seem that any reasonable argument can be made that BOKF did not have the authority to enter into the Stipulation and exchange or release collateral securing the Debtor's obligations to BOKF. Komptech agreed that BOKF:

> may do any of the following with respect to any obligation of [the Debtor], without first obtaining the consent of [Komptech]: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security.

Assignment Agreement, at 1. While that provision is intended to make clear that BOKF may proceed against the Komptech Collateral pledged by Komptech to secure the Debtor's obligations, it is not limited to those circumstances.

BOKF argues that Komptech entered into several agreements that contained provisions waiving additional suretyship defenses. That may be true, but it also may not be relevant to the issues before the Court. While Komptech waived certain suretyship defenses and limited its rights, the other provisions cited by BOKF relate to waivers that would limit Komptech in opposing an effort of BOKF to exercise rights with respect to the Komptech Collateral, as opposed to Komptech's potential rights as a subrogating creditor. I have not seen in the record

10

and BOKF has not cited any provisions that may be common in "deep subordination" agreements where Komptech has waived rights of subrogation, assigned subrogation rights, or agreed to hold funds received in trust for the benefit of BOKF until the Debtor's indebtedness to BOKF is paid in full.  Courts have varied in their approach as to whether and how contractual waivers and state law rights of subrogation might impact subrogation rights provided by 11 U.S.C. § 509.  *See, e.g.*, *Giuliano v. The Ins. Co. of the State of Pa. (In re LTC Holdings, Inc.)*, 597 B.R. 565, 573–74 (Bankr. D. Del. 2019) (determining § 509 controls over state law identified in agreement of indemnity regarding the accrual of subrogation rights), *aff'd*, C.A. No. 19-327 (MN), 2020 WL 5576850 (D. Del. Sept. 17, 2020), *aff'd sub nom. In re LTC Holdings, Inc.*, 10 F.4th 177 (3d Cir. 2021); *see also* 4 *Collier on Bankruptcy* ¶ 509.02 ("*Collier*") (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.) (noting that many courts "still apply common law standards in one form or another when conducting a section 509 analysis").  I do not have to reach those issues because no applicable contractual provisions appear to limit Komptech's subrogation claims under 11 U.S.C. § 509(a) or otherwise.

The inquiry does not end there.  Under the common-law doctrine of equitable subrogation, a "surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 137 (1962).  The right of equitable "[s]ubrogation is often called an equitable assignment or an assignment by operation of law," as "[s]ubrogation does not spring from contract although it may be confirmed or qualified by contract."  Restatement (Third) of Suretyship & Guaranty § 27 cmt. a (1996).  Under common law equitable subrogation as applied by most states, payment in full of the assured party is typically required before rights are subrogated.  *See generally In re LTC Holdings*, 597 B.R. at 574 n.47 (collecting cases).

11

Section 509 has also been recognized as "the statutory enactment of the long-standing doctrine of equitable subrogation." *In re Chateaugay Corp.*, 89 F.3d 942, 947 (2d Cir. 1996). Notably, section 509 takes a slightly different approach from common law equitable subrogation regarding when and how a subrogation claim may be asserted. While a common law equitable subrogation claim arises upon payment in full by a subrogee, § 509(a) allows a subrogee to assert rights of subrogation to the extent that an obligation to an assured party is paid by the subrogee, but § 509(c) operates to subordinate the subrogation claim to and for the benefit of the claim of the assured party until that assured party is "paid in full." 11 U.S.C. § 509(c).

Section 509 of the Bankruptcy Code provides:

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor *to the extent of such payment*.

(b) Such entity is not subrogated to the rights of such creditor to the extent that—

   (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—

      (A) allowed under section 502 of this title;

      (B) disallowed other than under section 502(e) of this title; or

      (C) subordinated under section 510 of this title; or

   (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

(c) *The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.*

11 U.S.C. § 509 (emphasis added).

By providing that the court shall subordinate a subrogee's claim "to the claim of a

12

creditor and for the benefit of such creditor . . . until <u>such creditor's claim</u> is paid in full," the statute would appear to give effect to accepted principles of equitable subrogation through subordination of a subrogee's claim.  11 U.S.C. § 509(c) (emphasis added).  Some legislative history supports this reading of the statute:

> It is desirable to preserve present law to the extent that a surety or codebtor is not permitted to compete with the creditor he has assured until the assured party's claim has [been] paid in full. Accordingly, section 509(c) of the House amendment subordinates both a claim by way of subrogation or a claim for reimbursement or contribution of a surety or codebtor to the claim of the assured party until the assured party's claim is paid in full.

*In re LTC Holdings*, 2020 WL 5576850, at *7 (quoting 124 Cong. Rec. H. 11,094 (Sept. 28, 1978), S. 17,410–11 (Oct. 6, 1978)).  At common law, this principle was described as the "make whole" rule.  In the Restatement (Third) of Surety and Guaranty, § 27(1), the rule is described as follows: "Upon total satisfaction of the underlying obligation, the secondary obligor is subrogated to all rights of the obligee with respect to the underlying obligation to the extent that performance of the secondary obligation contributed to that satisfaction."  Comment b explains the general policy behind this rule:

> The purpose of subrogation is to reallocate the cost of performance from the secondary obligor to the principal obligor.  The mechanism by which this reallocation is accomplished should not cause any disadvantage to the obligee. The obligee would be disadvantaged, however, if the secondary obligor were subrogated to rights of the obligee before complete satisfaction of the underlying obligation.  In such a case, the rights obtained pursuant to the underlying obligation, with the result that the remaining rights of the obligee on account of the underlying obligation could be diminished.  Moreover, because both the secondary obligor and the obligee would be asserting rights arising from the same undivided claim, conflicting enforcements could easily result.  Thus, the secondary obligor is not entitled to subrogation to the right of the obligee until the underlying obligation is completely discharged.

Restatement (Third) of Surety & Guaranty, § 27(1) cmt. b.  Komptech disagrees and argues that § 509(c) is not applicable to subordinate its claim because it has fully satisfied **its** obligations to

13

BOKF:

> Komptech notes that even if it were ultimately unsuccessful in equitably subordinating the BOKF Claim or "payment in full" was required regardless of whether there was a pending equitable subordination claim, Komptech would be entitled to payment *pari passu* with BOKF as to any distribution BOKF receives over $764,322.55 because "payment in full" in the section 509 context means payment in full of the assured portion of the claim. "[A] surety's subrogated claim may be subordinated to the primary creditor's claim only until such time as the surety pays in full the portion of the creditor's claim to which it stood as surety, and the surety's subrogated claim is not subordinated to the remaining portion of the creditor's claim." 4 Collier on Bankruptcy ¶ 509.04 (16th 2024); *see also In re Tri-Union Dev. Corp.*, 314 B.R. 611, 627 (Bankr. S.D. Tex. 2004) (holding, in the case of a partial surety, that "if the [creditor]'s claims are not entitled to sovereign-like priority, the subrogee's rights (following full payment of their [sic, its] obligations) will be *pari passu* with the [creditor].").

Komptech Br., at 4 n.5.

As applied to these facts, the best reading of the statute is that § 509(a) when read with § 509(c) does not give Komptech a present interest in collateral in which BOKF has an interest and that Komptech's right to receive proceeds of that collateral are dependent on payment in full of the claim of BOKF, not satisfaction of only the assured portion of that claim. Here, BOKF will not recover the full amount of its claim so Komptech would not be entitled to any of the Escrowed Funds if the Stipulation is approved.

Section 509(c) uses the language "until such creditor's claim is paid in full," not "until the assured portion of such claim is paid in full." In the context of proceeds of collateral securing a debtor's obligations to an undersecured lender that has obtained a limited guaranty of only a portion of that debt and received full payment of that assured portion of the debt, reading the statute to provide something other than what is expressed in the most natural reading of its language could lead to an "absurd" result that would be contrary to what appears to be the intent of § 509(c) to give effect to common law principles and avoid a subrogee competing with the assured party.

As an example, assume that a lender loaned $2 million to a primary obligor, secured by all assets of the primary obligor. The lender also received a pledge of a $1 million account from a non-recourse guarantor to secure the obligations of the primary obligor. The primary obligor experiences a business failure and files bankruptcy. The guarantor paid the lender $1 million after the primary obligor defaulted. The assets of the primary obligor are liquidated resulting in proceeds of the lender's collateral of $700,000. If the proceeds are paid to the lender, it will have recovered a total of $1.7 million and possess a $300,000 deficiency claim. If I were to apply Komptech's reading of § 509(a) and (c), the lender would receive $350,000 from the collateral proceeds, and the guarantor would receive $350,000. The lender's recovery would be $1.35 million, and the guarantor's liability on its guaranty would be reduced to $650,000, notwithstanding that the lender would have a $750,000 deficiency claim. Such a result would deprive the lender of the benefit of its collateral from the primary obligor for the benefit of the guarantor. The statute does not mandate that result, and no legislative history has been cited indicating that such a departure from established principles of subrogation was intended by Congress. Of course, even if subordinated under § 509(c), a subrogee would still subrogate to the rights of an assured party with respect to collateral after the claim of the assured party had been paid in full if the assured party was oversecured.

I acknowledge that, considering different facts or in making general statements, other courts or commentators have interpreted § 509(c) differently. *See* 4 *Collier* ¶ 509.04 (citing *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 627 (Bankr. S.D. Tex. 2004)); *see also In re LTC Holdings, Inc.*, 10 F.4th at 186–87 (recognizing that there can be a narrow and broad view of "paid in full" under § 509(c) but determining that an assured party had not been paid in full under either view). Under these facts, where BOKF will be undersecured if the Stipulation is implemented, the most

reasonable view is that Komptech's subrogation claim is subordinate to BOKF's claim and its rights to proceeds of collateral granted to it by the Debtor. The case law interpreting § 509(c) is sparse, and neither the parties nor I have found reported decisions discussing partial subrogation in the context of lien rights squarely on point. While it is understandable that in some circumstances courts may hold that a subrogee may assert an unsecured subrogation claim under § 509(a) that is not subordinated to the claim of an assured party pursuant to § 509(c) in participating in a distribution to general unsecured creditors where the subrogee has fully satisfied its obligations to an assured party, that is not the case where a subrogee would "invade" the lien rights of the assured party and reduce its liability to the assured party. The security interests granted to BOKF, the assured party, by the Debtor created a property interest for the benefit of BOKF. The language of the statute (and the legislative history) does not support a reading of § 509(c) that would deprive BOKF of that property right for the benefit of Komptech, as a subrogee, where BOKF has not been paid in full. As such, Komptech has no choate interest in the Escrowed Funds where BOKF will be undersecured after giving effect to the Stipulation. Consequently, while Komptech has a subordinated subrogation claim and the right to object to the whether the Stipulation is a reasonable exercise of the Trustee's judgment and a benefit to the estate, Komptech is not entitled to adequate protection, and its consent to the proposed settlement is not required with regard to the distribution of the Escrowed Funds.

### B. The Reasonableness of the Settlement

I have considered the substantial experience of the Trustee in evaluating and litigating claims possessed by bankruptcy estates. I have also considered the Trustee's assessment that the Stipulation represents a fair and reasonable compromise that is in the best interests of the estate and that "settlement of the [Komptech/Butler Claims] as reflected in the Stipulation is in the best

interest of the Estate and overall a better outcome than what would result from further and uncertain litigation related to the Claims." The Trustee represents that

> the Stipulation considers (a) the strengths and weaknesses of the [Komptech/Butler Claims] and the defenses that have already been or would likely be asserted by Butler and Komptech, (b) the risks inherent in further, contested litigation, (c) the substantial legal costs and expenses that the Trustee would otherwise incur to continue to pursue the Claims, including undertaking substantial discovery and conducting hearings on dispositive motions and/or a trial, and (d) the delay and uncertainty associated with prolonged litigation and collection efforts.

Mot. to Compromise, at 12.

The Butler Claims are purportedly secured by all tangible and intangible property of the Debtor, and Butler has asserted that the Butler Claims have an outstanding balance (inclusive of attorneys' fees and interest) of not less than $325,000.00. Komptech has asserted that the Butler Claims should be subordinate to the claims of Citizens and should be disallowed for lack of consideration and because Butler received preferential payments. After balancing the merits of the claims, the risks and cost of litigation, and the associated delay, the Trustee believes that the settlement is in the best interests of the estate. The record supports that assessment, and after considering the legal standards and the best interests of creditors, I easily find that the Stipulation is above the lowest point in the range reasonableness as it relates to the Butler Claims and the other Claims. The settling parties have clarified on the record that the Stipulation does not affect the equitable subordination claims asserted in Count I of the Complaint or any other direct claims that Komptech may have against BOKF that may not have been asserted by the estate, and the Stipulation that I approve embodies those clarifications. The resolution of the other claims provided by the Stipulation are a reasonable resolution of those claims and benefit the estate.

17

IV. CONCLUSION

For the reasons above, the Motion to Compromise is GRANTED and the Stipulation is APPROVED.

Dated:  September 10, 2024

By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge